THE ANDREW B. HENDRYX COMPANY *vs.* THE CITY OF NEW HAVEN.

Third Judicial District, Bridgeport, April Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

The plaintiff conducts a manufacturing business in buildings owned by it on the north and south sides of Audubon Street in the city of New Haven; to avoid the necessity of transferring its goods by truck across the highway, it erected, without permission from any public authority, an overhead bridge or conveyor, resting upon supports situated upon its own land, interfering in no way with travel or traffic in the street below, and designed, by means of gravity or other method, exclusively for the carriage of merchandise and not for the passage of persons or vehicles. Audubon Street is five hundred feet in length and all of the land on either side thereof and lying between the land of the plaintiff and Whitney Avenue, whether owned by the plaintiff or by other parties, is used solely for manufacturing purposes. After the completion of the structure, the defendant city ordered, and threatened to cause, its removal, to prevent which the plaintiff sought an injunction in the present action wherein the defendant filed a cross-complaint claiming an order requiring that the conveyor be taken from the highway. *Held:*

1. That, under the principles announced in *Yale University* v. *New Haven, ante,* page 610, the plaintiff was not privileged to erect the conveyor without permission from the board of aldermen and was, therefore, not entitled to the relief sought in its complaint.

2. That the conveyor was an "obstruction," and a "bridge" within the meaning of § 650 of the city ordinances forbidding any person to "place any obstruction whatever . . . or erect or construct any bridge in or over any of the streets . . . without license from or permission from the proper authorities"; and that it was, likewise, within the meaning of §§ 414 and 415 defining as a common nuisance "every encroachment upon any street beyond the street line" and "every obstruction of any street."

3. That the conveyor was a "structure" under the terms of the municipal building code, requiring that a permit be obtained from the building inspector before "the erection, construction, or alteration of any building or structure," since the purpose of the code, to secure official supervision over the many forms of structures attached to buildings, would be largely defeated and the public danger from fire and other causes increased, if "structure" were limited, as claimed by the plaintiff, to detached or independent buildings.

4. That the defendant was entitled to the injunction prayed for in its cross-complaint.

5. That the board of aldermen has the power to permit the erection of a structure, such as the plaintiff's conveyor, provided it does not interefere with the public easement, or do injury to other owners of land upon the street, and provided it is reasonable under all the circumstances, among which is to be considered the public interest with which every legitimate manufacturing enterprise is affected.

6. That in determining the reasonableness of a structure over a highway, its size and width may be of great importance, or the fact that similar structures may already exist nearby, or the character of the locality, it being difficult to conceive of its reasonableness in an exclusively residential street or in a congested center devoted largely to wholesale or retail trade.

Argued April 22d—decided July 3d, 1926.

ACTION for an injunction to restrain the defendant from taking threatened action to abate as a nuisance an overhead conveyor across Audubon Street in the city of New Haven in which the defendant filed a cross-complaint for a mandatory injunction requiring the plaintiff to remove this structure, brought to the Superior Court in New Haven County and reserved by the court (*Ells, J.*), upon the admitted allegations of the pleadings, for the advice of this court.

The plaintiff alleged, and defendant admitted, these facts: Audubon Street in New Haven is a public highway about five hundred feet in length, and runs east and west between Orange Street and Whitney Avenue. The plaintiff owns a tract of land on the south side of this street, and since 1879 it and its predecessors have conducted a manufacturing business in buildings erected upon this land. It also owns a tract on the north side of this street and directly opposite a part of its tract on the south side. It has erected upon the tract on the north side buildings used in its manufacturing business for the storage, packing and shipping of its finished product. For fifty years last past the land in the westerly part of this street has been used for manufacturing purposes, and all of the land on Audubon Street and lying between the land of plaintiff and Whitney Avenue is used exclusively for manufacturing purposes. The plaintiff also owns three tracts of land on the south side of Audubon Street and east of its plant, and also one tract on the north side of this street and east of the tract used by it for its finished product. In carrying on its business, the plaintiff has transferred its finished product from its manufacturing plant to its plant on the north side of this street by means of an electric truck guided by an operator which has made, upon the average, one hundred and twenty trips a day. To avoid this crossing of Audubon Street, and to do this work more expeditiously, plaintiff has erected four uprights upon its own land, two on the south and two on the north side of this street and in front of its buildings, and it has constructed a device entirely supported by these uprights and with an equipment that, when completed, will enable it, by a system of gravity or other method, to transfer its finished product from its manufacturing plant to its storage, packing and shipping plant. This

device can only be used as a conveyor of merchandise, and not for the passage of persons or vehicles. It is twenty-two feet above the surface of Audubon Street, and does not and will not interfere with travel or traffic through, over and upon the surface of this street by vehicles or pedestrians either on the sidewalk or in the traveled way, or with any legitimate use of this street for a highway. It has cost the plaintiff $5,793.52. On December 5th, 1923, the defendant notified the plaintiff to remove this device on or before December 10th, 1923, or, if plaintiff did not comply with this notice, it would remove the structure as provided by the ordinances of the city. The plaintiff claimed a permanent injunction restraining defendant from removing this device, or in anyway interfering with it as erected.

In its answer defendant, after admitting the above facts as contained in plaintiff's complaint, further answered: that under authority of the General Assembly it duly enacted an ordinance known as the Building Code, which provided in part: "(1) Before the erection, construction or alteration of any building or structure, or part of same, . . . there shall be submitted to the Building Department an application for a permit . . . containing a detailed statement of the specifications . . . and accompanied by a full and complete copy of all necessary plans of such proposed work, and such detail structural drawings thereof as the Building Department may require." (5) ". . . The erection, construction, or alteration of said building, structure, or any part thereof . . . shall not be commenced or proceeded with, except after written approval by the Building Department of the applications, plans and detail drawings, and the issuance of a written permit." In § 11, a scale of fees is provided for a building permit for buildings. Neither the plaintiff nor any one on its

behalf has ever applied for or received the permit as described in the ordinance above quoted.

Defendant further alleged that it, pursuant to power granted it by the General Assembly, has duly enacted ordinances prohibiting encroachments beyond the street line of any street in New Haven, of which § 650 reads in part as follows: "No person shall . . . place thereon any obstruction whatever; . . . or erect or construct any bridge in or over any of the streets . . . in said city, . . . without a license or permission from the proper authorities." And that plaintiff, without any permission from defendant or from any commission, body, officer or board of defendant, began the erection of the structure described in the complaint and continued until it has become of the character of the device described in the complaint. Section 414 of the ordinances reads as follows: "Every encroachment upon any street beyond the street line, by any fence, building or step, shall be deemed a common nuisance." Section 415 reads as follows: "Every obstruction of any street, public square or walk in said city, contrary to any provision of the chapter concerning public works, shall be deemed a common nuisance." Section 450 reads as follows: "Whenever the director of public works shall have written notice from the chief of police of the existence of any of said nuisances in said city, if the same be in any public street, square, or grounds, or in any place designated in section 418 of these ordinances, he shall cause the same to be abated or removed at once." The device described in the complaint extends over Audubon Street.

The defendant also pleaded by way of cross-complaint by alleging as its paragraph one, all of the paragraphs of its answer, and as paragraph two, that the plaintiff intends to leave this structure permanently in the position described in the complaint. It claimed

relief under its cross-complaint, viz.: "An injunction requiring the plaintiff to remove said structure from the highway and to abate said nuisance, and restrain the plaintiff from making any use of so much of said structure as extends over the highway."

The plaintiff admits all of the allegations of the answer and cross-complaint.

*Philip Pond* and *Robert C. Stoddard,* for the plaintiff.

*Louis Feinmark,* for the defendant.

WHEELER, C. J.   *Yale University* v. *New Haven, ante,* page 610, was argued at the same term the instant case was argued and the opinion in that case has settled for this jurisdiction the most important of the questions involved in this action.   We determined in that case that the public easement in a highway, the fee to which was in the abutting landowner included so much of the space above the surface of the highway as was necessary to furnish all the light, air, and view to and over the highway required to provide and maintain the highway adequate and suitable for travel and transportation; that the abutting owner on the highway has an equal right to the use of the highway with each of the public, and such other rights of ownership in the fee as are not inconsistent with the public easement in the highway; that the abutting owner has no right to construct and maintain an unauthorized overhead structure across a highway whether it interferes with travel or traffic, or not; that the General Assembly has vested in the city of New Haven the sole authority and control over its highways, which were primarily vested in the General Assembly; that under the charter of New Haven the board of aldermen has authority to grant permission to erect and maintain an overhead

structure across a highway, provided it does not unreasonably interfere with the public easement of travel and transportation over the highway, nor do material injury to the owners of land on either side of the highway, and provided the exercise of this power by the city is reasonable under the surrounding circumstances.

The conclusions reached in the *Yale University* case are equally applicable in this case. The public easement in Audubon Street includes the space above that street, so far, at least, as necessary to furnish light, air, and view to and over the street. The plaintiff, the abutting owner, without authorization from the proper authority, had no right to erect, nor to maintain, the overhead structure connecting its buildings on opposite sides of the street. It follows that the plaintiff is not entitled to the injunctive relief it prays for, restraining the defendant from removing or interfering with this structure.

There remains for answer the final question of the reservation: Is the defendant entitled to the injunction prayed for in its cross-complaint? This plaintiff has, by erecting this overhead structure across the street without permission from the proper authority, the board of aldermen, obstructed the public easement of the city in this street and created a nuisance therein, and therefore the city, under its charter powers, may remove the structure and abate the nuisance, and is entitled to the injunctive relief it prays for. It rests its prayer for relief upon certain ordinances, enacted, it alleges, under authority given it by the General Assembly. None of these ordinances are attacked by the plaintiff as invalid by reason of being beyond the charter power, but as defective because they have no relation to this device, called by it a conveyor, or in their terms are invalid exercises of valid charter

powers. We will test these claims by reference to these sections of the ordinance. Section 650 provides that no person shall place upon any street any obstruction whatever, or erect or construct any bridge in or over any of the streets in the city. It is the contention of the plaintiff that the obstruction and bridge thus prohibited do not refer to this overhead device. Clearly "obstruction" includes anything which interferes with the highway easement and this structure unquestionably does that. "Bridge" is here used as a generic term to include every form of overhead structure devoted to travel or transportation. Section 414 provides that any encroachment upon any street beyond the street line shall be deemed a common nuisance, and § 415, that every obstruction of any street shall be deemed a common nuisance; these plainly cover a passway, or bridge, or conveyor, or any other overhead structure across a street, since each of these would be an encroachment upon, and an obstruction of, a street. All of these ordinances are within the powers conferred upon the defendant by its charter, as we have stated, notably in §§ 132 and 137 of the Charter of New Haven. Special Laws of 1899, p. 425, as amended by Special Laws of 1915, p. 220.

The defendant sets up in its cross-complaint the failure of the plaintiff to have applied for or received a permit under an ordinance known as the building code. The plaintiff challenges this ordinance as incapable of being construed to include an overhead device such as the plaintiff has erected. The term of this ordinance which can in fairness be most appropriately claimed to refer to and include a conveyor, a bridge, a passway or an arch, is "structure." The building code requires that a permit be obtained before the erection, construction or alteration of any building or structure. One of the definitions of "structure" in

Webster's New International Dictionary is "something constructed or built, as a building, a dam, a bridge." In its widest sense the Century Dictionary says it includes "any production or piece of work artificially built up, or composed of parts and joined together in some definite manner." The Standard Dictionary gives a similar definition, and it was adopted in *Favro* v. *State,* 39 Tex. Cr. R. 452, 46 S. W. 932. Under this definition a fence was held to be a structure. *Karasek* v. *Peier,* 22 Wash. 419, 61 Pac. 33, 35. Under a statute requiring the assessor to return a list of new structures for purposes of taxation, it was held that structure as used in the statute was not confined to an independent building but was intended, the court held, in accordance with this definition, to include anything which is built or constructed, an edifice or building of any kind, any piece of work artificially built up or composed of parts joined together in some definite manner. *Lewis* v. *State,* 69 Ohio St. 473, 69 N. E. 980. While a building is always a structure, all structures are not buildings. Structure was held to include billboards, in *Rochester* v. *West,* 29 App. Div. 125, 51 N. Y. Supp. 482; *Gunning System* v. *Buffalo,* 75 App. Div. 31, 77 N. Y. Supp. 987; and in *New York* v. *Wineburgh Advertising Co.,* 122 App. Div. 748, 753, 107 N. Y. Supp. 478, structure, as used in the building code and charter of New York, was held to include "sky signs" attached to a building. A statute of New Hampshire provided that any person erecting or continuing any building, structure, or fence upon or over any highway so as to obstruct the same or lessen the full breadth thereof shall be penalized. The Supreme Court held that a bay window projecting into the highway four feet and seven inches was a structure within the meaning of this statute. *State* v. *Kean,* 69 N. H. 122, 126, 45 Atl. 256. In *Jackson v. Yak Mining, M. &*

*T. Co.,* 51 Colo. 551, 119 Pac. 1058, the court designated the cribsticks or lagging, erected in a mine so as to form a continuous floor or gangway to be used by employees in going to and from their work, as structures. In the construction of a statute which provided that "when the injury is caused by a structure legally placed on such road by a railroad company, it, and not the party bound to keep the road in repair, shall be liable therefor," we said: "We think the railroad track would be a structure." *Lee* v. *Barkhampsted,* 46 Conn. 213, 218.

There are numerous other instances in the authorities where structure has been used in this wide sense. We think it was so used in this ordinance. The purpose of the ordinance is to protect life and body, and preserve property. If structure as used in connection with building meant an independent building, as we understand the plaintiff to claim, the purpose of the building code of New Haven would be largely defeated. The inspector of buildings would have no supervision over the many forms of structures which are attached to buildings which are not in any strict sense independent buildings, as, for example, bay windows, signs attached to the sides or roof of a building, passways, bridges or arches between buildings, all forms of structures in mines, billboards, platforms and staging. Without such supervision the fire risk would be greater, the danger to life and body increased and a larger police protection required.

The ordinance must be presumed to attempt to carry out the provisions of the charter. We construed, in *Yale University* v. *New Haven, supra,* part of § 137 of the charter of defendant, as giving to it authority to keep its highways open and safe for public use and travel and free from encroachments or obstructions, and power over the "regulation of any work or thing

therein, whether temporary or permanent, upon or over the surface thereof." We said: "By any work the legislature intended to include any sort of structure which may be erected over the highway, and hence across the highway, and by 'thing' the intent was to refer especially to these temporary and incidental features to which we have adverted."

The plaintiff argues that there are sections of this code in which "structure" is used as synonymous with "building," and hence wherever "structure" is used it must be construed as meaning a building. We do not regard the argument as of sufficient force to now require a detailed examination of these sections.

In the section providing for the fee for the building permit, the fees are graduated in proportion to the cost of the "buildings," but it concludes that the "fee shall be paid by the owner of the building or structure." In this instance at least the word "buildings" is used in the double sense of the independent building and the structure. Variations in the words used to represent a given thing are not uncommon in municipal ordinances. In construing these differing uses courts look for the primary purpose and intent of the framers and, having found them, give to the words used this meaning and intent throughout, unless the terms of the ordinance, or the context or content make this impossible.

The plaintiff next attacks the ordinance as defective because it does not provide what person shall issue the permit. The charter as amended (Special Laws of 1911, p. 624) established a building department and placed it under the management and control of the building inspector. Under the direction of the building inspector was a bureau of plumbing inspection, the head of which was the plumbing inspector, and a bureau of electrical inspection, the head of which was

the electrical inspector. The building ordinance was adopted pursuant to the powers vested in the board of aldermen and in accordance with these charter provisions concerning the building department. Section 59 of the Ordinances as published in Charter and Ordinances of City of New Haven, Conn., 1914, provides that "before proceeding with the erection or alteration of any building, or any platform, etc., a permit shall be obtained from the inspector of buildings by the owner or his agent." We find no ambiguity in this ordinance in the particulars claimed as thus far discussed. The inspector of buildings and he alone has power to issue such permits.

Plaintiff contends further that § 650, providing that "no person shall . . . erect or construct any bridge in or over any of the streets . . . in said city . . . without license or permission from the proper authorities," is an invalid ordinance because the authority to grant the license or permission is not named in the ordinance. The charter, as we have pointed out in *Yale University* v. *New Haven, supra,* vests this power in the board of aldermen. The permit authorized under the building ordinance is a wholly different permit and issued for a quite different purpose. Neither ordinance is open to the plaintiff's charge that they are grants of arbitrary power and, as plaintiff contends, within the ruling in *Ingham* v. *Brooks,* 95 Conn. 317, 111 Atl. 209.

The defendant is entitled to the relief it seeks under its cross-complaint, requiring the plaintiff to remove from the highway this structure which it has erected over and across Audubon Street, and restraining it from making any use of so much of the structure as extends over the highway. That the parties may know their entire rights in the premises, we supplement this opinion with this statement: The overhead structure

in the *Yale University* case was an ornamental bridge or arch serving a public purpose. In the instant case it is a structure for transporting across Audubon Street the finished product of plaintiff's industry. Its primary purpose is to serve the private interest of the plaintiff manufacturing company, which has erected this structure. Every legitimate manufacturing industry is affected with a public interest. It furnishes employment to those engaged in the industry and adds to the working capital in the State. In communities as dependent as are our industrial centers upon our manufacturing industries, the public interest they serve cannot be ignored in determining the reasonableness of an application by one of these industries for an overhead structure over a highway connecting buildings of its plant on opposite sides of a street. The city of New Haven by its board of aldermen has power to grant to an owner of lands on opposite sides of a street permission to erect an overhead structure, such as this structure, connecting the buildings of its manufacturing plant on opposite sides of the street, provided the structure will not materially interfere with the highway easement of light, air, or view to or over the highway, nor do injury to the owners of land upon the street, and provided the exercise of this power be reasonable in the light of the surrounding circumstances. It would be difficult to conceive of the reasonableness of an overhead structure erected across a street which was devoted exculsively to residences, or across a street in a congested business section devoted largely to retail or wholesale business. The size of the structure may often be determinative of its reasonableness. If it be not a bridge or passway, or arch or conveyor, but in fact a building over the street, its reasonableness cannot be found. Its width and size may be determinative of its unreasonableness. One such structure

as this conveyor in a block such as is this part of Audubon Street, might be a reasonable use, while a second such structure might be entirely unreasonable. The highway easement must be preserved in its entirety and integrity. The rule we have applied in the *Yale University* case and the instant case, exercised on proper occasions and in a reasonable manner, will not impair public rights nor invade private interests. Had the plaintiff secured from the board of aldermen permission to erect this structure or conveyor, it must have then duly secured a permit from the inspector of buildings before it would have been authorized to erect it.

The Superior Court is advised that we answer questions A, B, and C, no, and question D, yes.

No costs in this court to be taxed in favor of either party.

In this opinion the other judges concurred.