EASTERN CONNECTICUT CABLE TELEVISION, INC. *v.* TOWN OF MONTVILLE

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued January 9—decision released April 29, 1980

*Donald O'Brien,* for the appellant (plaintiff).
*James J. Devine,* for the appellee (defendant).

COTTER, C. J. The issue presented in this appeal is whether a communications tower owned by the plaintiff and located in the defendant town is subject

to municipal taxation under § 12-64 of the General Statutes.[1] The plaintiff appealed to the Superior Court from the action of the assessor of the town in listing the plaintiff's tower as taxable property on the assessment lists for the years 1975 to 1978 inclusive. Following a trial to the court, judgment was rendered in favor of the defendant from which the plaintiff has appealed.

The plaintiff, Eastern Connecticut Cable Television, Inc., is a community television antenna company. See General Statutes § 16-330. In 1974, the plaintiff erected a tower on its land located in the town of Montville which supports eighteen or nineteen television antennas which receive television broadcasts from various directions, and three microwave antennas which are used for transmitting. The tower is 385 feet high and is constructed of twenty tubular steel sections which are bolted together. The tower rests on a foundation of concrete measuring three feet by three feet and embedded six feet into the ground, and the bolt securing the tower to the foundation is embedded a foot or more into the concrete block. In addition, there are three sets of guy wires used to support the tower which are fastened to turnbuckles which in turn are fastened to metal bolts embedded in three additional blocks of concrete. There is a small building located next to the tower and cables from each of the antennas are connected to receivers located inside the building. The

---

[1] In view of the conclusion reached on this issue, we need not consider the plaintiff's second argument that the tower is tangible personal property and therefore exempt from municipal taxation under § 12-268j of the General Statutes.

plaintiff does not contest the taxation of its land and the building next to the tower or the valuation attributed to its property.[2]

Even assuming arguendo that the tower is so permanently affixed to the realty so as to have lost its character as personalty,[3] it does not necessarily follow that the tower is subject to taxation under § 12-64.[4] As the court noted in *Hartford Electric Light Co.* v. *Wethersfield,* 165 Conn. 211, 217, 332 A.2d 83, "[t]he provision in § 12-64 which requires the assessors to set '[a]ny interest in real estate' in the list of the record owner of such interest has thus been definitively interpreted to mean no more than that the assessor must list any taxable interest, previously defined as '[d]welling houses, garages, barns, sheds, . . . build-

---

[2] The record does not indicate whether the antennas mounted upon the tower were placed on the assessment list and if so whether the plaintiff challenges that assessment. Accordingly, we express no opinion regarding the taxation of those antennas.

[3] In *Connecticut Light & Power Co.* v. *Oxford,* 101 Conn. 383, 394, 126 A. 1, the court held that towers owned by the plaintiff water company but situated on land not owned by it and upon which transmission lines were carried were not real property. We need not resolve whether the fact that the plaintiff in the present case owns the fee upon which the tower is located is sufficient to render that tower so attached to the realty so as to become a part thereof.

[4] Section 12-64 of the General Statutes provides in pertinent part: "All the following-mentioned property, not exempted, shall be set in the list of the town where it is situated and, except as otherwise provided by law, shall be liable to taxation at a uniform percentage of its present true and actual valuation, not exceeding one hundred per cent of such valuation, to be determined by the assessors: Dwelling houses, garages, barns, sheds, stores, shops, mills, buildings used for business, commercial, financial, manufacturing, mercantile and trading purposes, ice houses, warehouses, silos, all other buildings, house lots, all other building lots, agricultural lands, shellfish lands, all other lands, quarries, mines, ore beds, fisheries, property in fish pounds, machinery and easements to use air space whether or not contiguous to the surface of the ground."

ings, . . . house lots,' in the name of the record owner of the freehold." Recognizing that the taxing authority of a municipality must conform strictly to the terms by which it was conferred; *Pepin* v. *Danbury,* 171 Conn. 74, 83, 368 A.2d 88; *Low Stamford Corporation* v. *Stamford,* 164 Conn. 178, 182, 319 A.2d 369; *Consolidated Diesel Electric Corporation* v. *Stamford,* 156 Conn. 33, 36, 238 A.2d 410; the town admits that the word "tower" is not specifically set out in General Statutes § 12-64 but contends that it is taxable impliedly either as a "building" or as "machinery" as those terms are utilized in the statute. See *Connecticut Light & Power Co.* v. *Oxford,* 101 Conn. 383, 126 A. 1.

A statutory term should be accorded its ordinary meaning "according to the commonly approved usage of the language." General Statutes § 1-1 (a); *Doe* v. *Institute of Living, Inc.,* 175 Conn. 49, 57, 392 A.2d 491; *International Business Machines Corporation* v. *Brown,* 167 Conn. 123, 134, 355 A.2d 236; and there is nothing in the statute to indicate that the word "building" is not to be taken in its ordinary and popular sense. *Katsoff* v. *Lucertini,* 141 Conn. 74, 78, 103 A.2d 812. The term "building" is defined in Webster's Third New International Dictionary (unabridged) as a "constructed edifice designed to stand more or less permanently, covering a space of land, usu. covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure—distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy." See, e.g., *Parsons* v. *Van Wyck,* 56 App. Div. 329, 336, 67 N.Y.S. 1054 (the term building

does not include a monument 100 feet in height on a platform 120 feet long and erected in a city park); *Small* v. *Parkway Auto Supplies, Inc.,* 258 Mass. 30, 34, 154 N.E. 521 (gasoline pump, underground tank and concrete pit were held not to be a building within the meaning of a restrictive covenant). It is significant to note that § 12-64 itself recognizes a distinction between "buildings" and "structures" in those provisions concerning the allocation of, and liability for taxes on "structures, buildings or other improvements" as between a lessor and lessee. In addition, this court has recognized that while a building is always a structure, all structures are not buildings. *Katsoff* v. *Lucertini,* supra; *Hendryx Co.* v. *New Haven,* 104 Conn. 632 640, 134 A. 77. In *Katsoff,* for example, it was held that a provision contained in a restrictive covenant prohibiting the construction of a building higher than one story did not prohibit the construction of a billboard atop an existing one story building since the billboard, although concededly a structure, was not a building as that term was used in the covenant.

In determining the meaning of the term "building" as utilized in § 12-64, we are mindful of the rule of ejusdem generis which explains that "where a particular enumeration is followed by general descriptive words, the latter will be understood as limited in their scope to . . . things of the same general kind or character as those specified in the particular enumeration." *Easterbrook* v. *Hebrew Ladies Orphan Society,* 85 Conn. 289, 296, 82 A. 561; *Hartford Electric Light Co.* v. *Wethersfield,* supra, 218. Accordingly, the general term "all other buildings" must be construed in light of the immediately preceding enumeration of buildings which includes dwelling houses, garages, barns, sheds, stores, shops,

mills, ice houses, warehouses, and silos. The plaintiff's tower possesses none of the characteristics of those buildings listed in the statute. It is not enclosed and is unsuitable for occupancy or storage which are the distinguishing features of the listed buildings. In determining the meaning of the word "building," recourse must be had to peculiar facts and circumstances of each particular case and provisions of the statute. We have held, for example, that an open air theatre was not a building within the meaning of a building code which was adopted to meet conditions prevailing in a permanent structure of walls, roof and floor. *Middlesex Theatre, Inc.* v. *Hickey*, 128 Conn. 20, 23–24, 20 A.2d 412. In light of the rule that ambiguities in taxing statutes are to be construed in favor of the taxpayer; *Pepin* v. *Danbury*, supra; *Hartford Electric Light Co.* v. *Wethersfield*, supra; we conclude that the plaintiff's tower, albeit a structure, cannot appropriately be classified as a building within the meaning of § 12-64.[5]

The town's contention that the tower is taxable as machinery is similarly unavailing. The tower is used simply as a support for the various antennas which receive and transmit broadcasting signals. The tower itself neither transmits nor changes the application of energy. As such, we cannot torture the statute by imposing upon it the construction urged by the town.

---

[5] See also *Byers* v. *Board of Supervisors*, 262 Cal. App. 2d 148, 156, 68 Cal. Rptr. 549 (television translator station was not building within the purview of statute authorizing county to construct buildings); *Pichette* v. *Manistique Public Schools*, 50 Mich. App. 770, 774, 213 N.W.2d 784 (slide anchored by concrete on school playground was not building within statutory exemption from doctrine of governmental immunity).

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff.

In this opinion the other judges concurred.