[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON THIRD PARTY DEFENDANT STATE OF CONNECTICUT'S MOTION TO DISMISS THIRD PARTY COMPLAINT
CT Page 8894
Plaintiff, Raymond Bethke, filed a two-count complaint on December 24, 1991, alleging that he suffered injuries at an East Haven, Connecticut off-track betting facility when an overhead lighting fixture fell from the ceiling and struck him. Count two of the complaint is the count directed at defendants American Totalisator Company and General Instrument Corporation, (collectively "AmTote"), and seeks damages from those defendants, because they "conducted a legally sanctioned off-track betting business . . . to which the general public was invited as business patrons," defendants were "in control of the building premises," and "[s]aid striking of the plaintiff was directly and proximately the negligence of the defendants. . . ."
On April 2, 1992, AmTote filed a Motion to Implead the State of Connecticut, (the "State"), which was granted on April 22, 1992. AmTote's third-party complaint alleges in the first count that AmTote and the State had entered into a contract and, according to the contract, the State was responsible for providing "sufficient and suitable personnel for ordinary and routine interior building maintenance at said Off Track Building Facility." AmTote brings this action pursuant to General Statutes section 12-572, and AmTote contends that "[i]f the Plaintiff is to recover any damages in his Complaint from Third Party Plaintiffs," such damages resulted from "Third Party Defendant's breach of the express provisions of said agreement."
The second count avers that "[i]f the plaintiff suffered any injuries or damages . . . then the same are due to the primary, active and direct negligence of the Third Party Defendant rather than the passive and secondary negligence, if any, of the Third Party Plaintiffs," and "[i]f the Third Party Plaintiffs are held liable to the plaintiff under any allegations of the Complaint, then they are entitled to indemnification from the Third Party Defendant. . . ."
Count three further alleges that the agreement contained an implied duty that the State would "indemnify and hold harmless Third Party Plaintiffs for any injuries or damages resulting from Third Party Defendant's own negligence in its performance of its duties under said agreement." AmTote contends that if plaintiff recovers any damages "from Third Party Plaintiffs, then Third Party Plaintiffs are entitled to indemnification under the implied provisions of said agreement." CT Page 8895
A motion to dismiss tests whether, on the face of the record, the court lacks jurisdiction, Upson v. State, 190 Conn. 622,624, 461 A.2d 991 (1983). A question concerning subject matter jurisdiction may be raised at any time, Concerned Citizens of Sterling v. Sterling, 204 Conn. 551, 556, 529 A.2d 666 (1987) and the issue of sovereign immunity is properly addressed by a motion to dismiss. Duguay v. Hopkins, 191 Conn. 222, 227,464 A.2d 45 (1983).
The state moves to dismiss on the ground that the doctrine of sovereign immunity bars the action. The State observes that this action is brought against the Sovereign State of Connecticut, and, because the State has not expressly authorized the suit, the action is not maintainable.
AmTote opposes the motion, contending that this third-party action has been expressly and impliedly authorized by the legislature. AmTote further argues that sovereign immunity is not a valid defense when the State acts in excess of its statutory authority, nor does sovereign immunity apply when the government acts in a proprietary capacity.
The State is immune from suit unless it consents to be sued (Citations omitted). Lacasse v. Burns, 214 Conn. 464, 468,572 A.2d 357 (1990). The General Assembly may legislatively authorize suits against the State, "`[b]ut the State's sovereign right not to be sued without its consent is "not to be diminished by statute, unless a clear intention to that effect on the part of the legislature is disclosed, by the use of express terms or by force of a necessary implication."'" (Citation omitted) Id., 468. The Connecticut Supreme Court has emphasized that "because the state has permitted itself to be sued in certain circumstances, this court has recognized the well established principle that statutes in derogation of sovereign immunity should be strictly construed." (Citations omitted). White v. Burns, 213 Conn. 307, 312, 567 A.2d 1195 (1990). If there is any doubt about the meaning or intent of such statutes, "they are given the effect which makes the least rather than the most change in sovereign immunity." Id., 312. Under such rules of construction, a party plaintiff must establish "`that there is a precise fit between the narrowly drawn reach of the relevant statute . . . and the contractual language upon which the plaintiff depends. . . ." (Citation omitted). Defonce Construction Corp. v. State of Connecticut, 198 Conn. 185, 188, 501 A.2d 745 (1985). CT Page 8896
AmTote has attached portions of the contract to its memorandum in opposition to the State's Motion to Dismiss. The contract establishes that "[t]his Agreement is entered into pursuant to Sections 12-559, 12-562 and 12-572 of the Connecticut General Statutes, as amended. The laws of the State of Connecticut shall govern the validity and interpretation of this Agreement." The contract further provides that the State is responsible for providing "sufficient and suitable personnel. . ." to perform various functions, including "ordinary and routine interior building maintenance (except as provided in Section 3.1(a)) of all facilities of the System. . . ."
General Statutes section 12-572 governs the establishment of off-track betting facilities, and section 12-572(f) provides, in relevant part, that an entity entering into a contract with the state may "in the event of any disputed claims under such contract, bring an action against the state to the superior court for the judicial district of Hartford-New Britain for the purpose of having such claims determined. . . ." (Emphasis added). This section further provides that "[s]uch action shall be tried to the court without a jury."
In Valentino v. General Instrument Corp., 5 CTLR 123 (Nov. 8, 1991, Murray, J.), the court granted the State's motion to dismiss a third-party complaint under a set of facts similar to the facts presented by the case at bar. In Valentino, the court emphasized that both Berger, Lehman Associates, Inc. v. State,178 Conn. 352, 355-56 (1975), and DeFonce Construction Corporation v. State, supra, require a court to engage in a "precise fit" analysis to determine whether the state has waived its sovereign immunity. In Valentino, the court noted that the counts of the third-party complaint were framed "upon the present possibility of the state's liability," and it observed that the third-party plaintiff "at this time, has no claim against the state, but may have one under the contract if [first-party plaintiff] prevails and is awarded damages." Id., 124. The court determined that a "precise fit" did not exist because third-party plaintiff's complaint did "not now present the `disputed claim' intended by [section] 12-571 for a courtside trial." Id., 124.
In the instant case, AmTote's third-party complaint against the State is grounded on the possibility that AmTote may be held liable to plaintiff Raymond Bethke, and if Bethke recovers CT Page 8897 damages from AmTote, then AmTote claims that it is entitled to indemnification from the State; accordingly, a "disputed claim" will arise only if plaintiff Bethke is successful in his suit against AmTote. Therefore, the court is of the opinion that a "precise fit" does not exist between the language of section12-572(f) and the contractual language upon which third-party plaintiff relies because AmTote's third-party complaint, at this juncture of the litigation, does not yet present a "disputed claim" within the meaning of section 12-572(f). See Valentino v. General Instrument Corp., supra. Contra Formichella v. AmTote Systems, 4 CSCR 575 (June 19, 1989, Cretella, J.).
The remaining claims advanced by the third party plaintiffs in opposition to the motion to dismiss are without merit.
For the reasons above stated, the motion to dismiss the third party complaint is granted.
HADDEN, JUDGE